UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>SHAWN MICHAEL BALVA,<br><br>                              Defendant. | Case No. 2:15-cr-00307-KJD-VCF<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |

Before the Court is Defendant's Motion for Compassionate Release under FIRST STEP Act (ECF #48/51). The government responded in opposition (ECF #54) to which Defendant replied (ECF #57).

I.      Factual and Procedural Background

There are two motions for compassionate release currently on the docket. The first (ECF #48) was filed by an inmate on Defendant Shawn Michael Balva's ("Balva") behalf and without his knowledge. The government contacted the Federal Public Defenders Office ("FPD") to discuss the motion. (ECF #50). FPD indicated it was reviewing Balva's case and determining whether it would file another motion. Id. One month later, Balva's FPD counsel filed the proper motion for compassionate release. (ECF #51).

Balva was charged in a three-count Criminal Information with Possessing a Firearm During a Crime of Violence in violation of 18 U.S.C. § 922(c) and Hobbs Act Robbery in violation of § 1951 on November 4, 2015. Id. at 2. On April 26, 2016, Balva entered a plea agreement for two counts of Interference with Commerce by Robbery and one count of Brandishing a Firearm During and in Relation to a Crime of Violence. (ECF #26, at 2). Then, on May 5, 2016, Balva moved to revoke his pretrial release so he could self-surrender and begin earning credit toward his sentence as soon as possible. Id. The Court set a hearing for May 10,

2016 to discuss the revocation of pretrial release. (ECF #27). At the hearing, the Court granted Balva's motion to revoke and Balva self-surrendered to the U.S. Marshals that same day. (ECF #28). The Court sentenced Balva to a total sentence of 96 months and one day, followed by three years of supervised release, per count, as to Counts One and Two and five years of supervised release as to Count Three. (ECF #36, at 2–3). All the terms of release are to run concurrently. Id. at 3.

Balva began his sentence in Victorville but is currently located at FCI Otisville and appears to have made strides in his rehabilitation. (ECF #57, at 2). He "left the closeness with [his] family to engage in the closeness of [his] religion." Id. at 3. The letters of support and articles about him show that Balva has embraced religion and desires to share his newfound perspective and outlook with those around him. (ECF #51-3, 51-4, 51-5). At FCI Otisville, Balva studies the Torah with 15 other Jewish inmates and receives visits from Rabbis who live nearby. (ECF #57, at 3). If released, Balva would be able to care for his ailing grandmother who suffers from mid-stage dementia. (ECF #51, at 10). Balva's custodial sentence will not be complete until February 17, 2023 (ECF #54, at 9) but he may be eligible for release to a halfway house on February 18, 2022. (ECF #51, at 2).

II.     Legal Standard

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the Court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the Court must find "extraordinary and compelling reasons" to release a defendant from Bureau of Prisons ("BOP") custody. Id.

### III.   Analysis

The record indicates that Balva exhausted his administrative remedies and the government does not argue otherwise. The Court makes such a finding without further analysis. However, because the Court finds that Balva has not demonstrated that extraordinary and compelling reasons exist to justify a modification to his sentence, his motion is denied.

Balva's motion is unique in that he does not argue that he has any underlying health conditions or is at elevated risk of serious harm from COVID-19. In fact, Balva appears to be in good health and declined to be vaccinated. (ECF #54, at 7). Balva does not list risk of COVID-19 infection as a reason for his release. Instead, he argues that his rehabilitation up to this point, the obstacles to further rehabilitation posed by the COVID-19 pandemic, the proximity of his release into a halfway house, his desire to care for his ailing grandmother, and the Court's inability to deviate from the mandatory minimums at sentencing constitute extraordinary and compelling reasons that justify release. In its response, the government argues that the BOP facility where Balva is housed may actually provide better protection from COVID-19 than if he were released because 95% of the inmates have been vaccinated. The government also argues that Balva is being untruthful when he states that he has "taken every opportunity to grow himself" because he refused admission into the Residential Drug Abuse Program ("RDAP") and that Balva's desire to care for his ailing grandmother is not an extraordinary and compelling reason to justify release. In his reply, Balva clarifies that he did not enroll in RDAP because it would have required him to transfer to a different BOP facility. Balva has a Torah study group and religious examples at Otisville that he did not want to abandon.

The Court agrees that Balva does not seem overly concerned with the health risks of

COVID-19. However, that is not the basis of his argument. Balva argues that he warrants compassionate release because of the new nature of his sentence caused by the pandemic. Due to COVID-19 protocols some of Balva's classes are canceled. This change in lifestyle, according to Balva, combined with his upcoming date of release to a halfway house, the mandatory minimum sentence he received, and his desire to care for his grandmother constitute extraordinary and compelling circumstances that justify release.

Balva provides the Court with cases to show why his circumstances justify compassionate release in the absence of fear or elevated risk of COVID-19. However, while the citations appear relevant in the brief, each is factually dissimilar from Balva's situation. The cases do not support the arguments for which they were cited. For the argument that Balva's lengthy term of imprisonment, his rehabilitative strides while incarcerated, and his good conduct weigh in favor of release, Balva cites United States v. Archer. No. 2:93-cr-259-JCM, 2020 WL 4059694 (D. Nev. July 20, 2020). In Archer, the court found that the defendant warranted compassionate release and was not a danger to the community. Id. at *3. Archer had served 26 years and 7 months of his term, had three underlying health conditions that put him at greater risk of serious injury due to COVID-19, and was housed in a facility that had seen a recent outbreak in COVID-19 cases. Id. The court analyzed Archer's "lengthy term of incarceration, his rehabilitative strides while incarcerated, and his good conduct" to determine whether Archer was a danger to the community, not whether he demonstrated extraordinary and compelling reasons to justify release. Id. The extraordinary and compelling analysis concerned Archer's health and COVID-19 risk. Because there is no risk here, Archer does not apply.

United States v. Regas, No. 3:91-cr-00057-MMD-NA-1, 2020 WL 2926457 (D. Nev. June 3, 2020) also fails to show what Balva claims it shows. Balva asserts that the Regas court found that "a lack of access to programming and inability to see family contributes to a finding of extraordinary and compelling circumstances." Id. at *3. Regas, like Archer, feared for his health. Regas was a 77-year-old inmate who had served 27 years of his sentence. Id. at *1. In the hope of preventing Regas from contracting COVID-19, prison staff placed him in solitary confinement for 22.5 hours per day. Id. at *3. The court made its ruling regarding the lack of

access to prison programs for this specific and extreme circumstance. That scenario is entirely different than Balva's, who is unable to access some rehabilitative classes, not locked in solitary confinement with fear of COVID-19 as a high-risk individual. As such, Regas does not suggest that Balva's lack of access to classes on its own constitutes extraordinary and compelling circumstances that justify release.

Balva also relies on United States v. Cruz to make his argument that his circumstances are extraordinary and compelling. 467 F.Supp.3d 958 (D. Or. 2020). Quoting Cruz, Balva's motion states that "[s]ome courts have found proximity of release and significant rehabilitation to be 'extraordinary and compelling reasons for granting compassionate release.'" (ECF #51, at 5 (quoting Cruz, 467 F.Supp.3d at 962)). However, Cruz is factually distinct from this case. Cruz was already eligible for release to a halfway house when he filed his motion for compassionate release. Cruz, 467 F.Supp.3d at 962. Balva is not yet eligible for such release. Additionally, the facility where Cruz was located was "unable to perform basic and statutorily mandated administrative functions" because it had to shut down after a significant COVID-19 outbreak that showed a doubling of cases in one week. Id. 961. Balva has not shown that basic and statutorily mandated administrative functions of the BOP facility have been shut down. The case is inapposite to Balva's and does not show that his circumstances are extraordinary and compelling.

Finally, Balva cites United States v. Vargas to show that the desire to care for his ailing grandmother must be considered when determining extraordinary and compelling circumstances. 502 F.Supp.3d 820 (S.D.N.Y. 2020). Again, the facts of Vargas make it difficult to apply to this case. Vargas had served 27 years of his sentence, was borderline obese, had hypertension, and wished to take care of his elderly mother who had breast cancer, diabetes, and a suppressed immune system. Id. at 828. In addition to caring for his elderly mother and the elevated risk of COVID-19, the court found that "a defendant similarly situated to Mr. Vargas would be very unlikely to be sentenced in the Southern District of New York to anything approaching 40 years." Id. at 824. Balva does not have any underlying health conditions and there is no evidence that a similarly situated defendant would not be sentenced similarly today. In fact, as the government points out, Balva received a more lenient sentence from the Court than required.

(ECF #54, at 9–10 (explaining that Balva could have been charged with seven counts of Hobbs Act robbery instead of only two, and that the Court showed leniency by sentencing Balva to 96 months in prison which was well below the 130-month low-end guideline sentence)). The Vargas court combined these circumstances, stating that "[c]onsidering Mr. Vargas's rehabilitation in conjunction with his unduly harsh sentence, his medical issues and heightened risk of severe illness or death due to the COVID-19 pandemic, and his intention to care for his ailing, elderly mother, the Court finds that Mr. Vargas has demonstrated extraordinary and compelling reasons" to justify release. Id. at 830. Balva has not made such a demonstration as only two of the four considerations apply to him. The Court will consider his desire to care for his ailing grandmother in conjunction with the other circumstances, but that alone is insufficient to warrant compassionate release.

The cases cited in Balva's motion do not convince the Court that extraordinary and compelling reasons exist to justify his release. Each considers Balva's circumstances in light of elevated risk of COVID-19 or a facility dealing with a COVID-19 outbreak. None of the cases indicate that rehabilitation or desire to care for an ailing family member, without the additional COVID-19 risk, constitute extraordinary and compelling reasons to justify release. Applying Balva's argument would seemingly determine that any defendant who has made rehabilitative progress and whose schedule has been impacted by COVID-19 protocols would be eligible for compassionate release. However, that is not what compassionate release is meant for, as it is "a *limited* exception to the general rule that the Court may not modify or reduce the length of a sentence after the Court has imposed it." Regas, 2020 WL 2926457, at *2 (emphasis added).

The Court commends Balva for his rehabilitation and his efforts to share his story and experience with others. However, as Balva indicates in his motion, "rehabilitation alone cannot be extraordinary and compelling" to justify release. (ECF #51, at 5). Balva does not fear for his health, is not at elevated risk of COVID-19, and the totality of his circumstances do not warrant compassionate release. Accordingly, because Balva cannot show that extraordinary and compelling reasons exist to justify his release, his motion is denied.

IV.     Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Compassionate Release (ECF #48/51) is **DENIED**.

IT IS FURTHER ORDERED that the government's Motion for Leave to File Sealed Exhibit (ECF #55) is **GRANTED**.

Dated this 18th day of November, 2021.

                                      Kent J. Dawson
                                      United States District Judge